Slip Op. 16-79

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TIANJIN WANHUA CO., LTD., <br><br>                Plaintiff, <br><br>     v. <br><br> UNITED STATES, <br><br>                Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 15-00190 |

**MEMORANDUM and ORDER**

[Commerce's final results remanded.]

Dated: August 15, 2016

David J. Craven and Saichang Xu, Riggle & Craven of Chicago, Illinois, for Plaintiff Tianjin Wanhua Co., Ltd.

Tara K. Hogan, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. On the brief with her were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Nanda Srikantaiah, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

J. Michael Taylor, Stephen A. Jones, and Mark T. Wasden, King & Spalding of Washington, DC for Defendant-Intervenor Terphane, Inc.

Jeffrey I. Kessler, Ronald I. Meltzer, Patrick J. McLain, and David M. Horn, Wilmer, Cutler, Pickering, Hale & Dorr, LLP of Washington, DC for Defendant-Intervenors Mitsubishi Polyester Film, Inc. and SKC, Inc.

Gordon, Judge: This action involves the fifth administrative review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering polyethylene terephthalate film, sheet, and strip from the People's Republic of China. See Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China,

80 Fed. Reg. 33,241 (Dep't Commerce June 11, 2015) (final results admin. review) ("Final Results") and accompanying Issues and Decision Mem. for Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China, A-570-924 (June 3, 2015), ECF No. 33-3 ("Decision Mem.").

Before the court is the USCIT Rule 56.2 motion for judgment on the agency record of Plaintiff Tianjin Wanhua Co., Ltd. ("Plaintiff" or "Wanhua"). See Pl.'s Mem. Supp. Mot. J. Agency R., ECF No. 41 ("Wanhua Br."); see also Def.'s Mem. Opp'n Pl.'s R. 56.2 Mot. J. Agency R. and Mot. Partial Voluntary Remand, ECF No. 51 ("Def.'s Resp."); Pl.'s Reply to Def.'s Resp., ECF No. 59 ("Wanhua Reply"). In lieu of briefing, Defendant-Intervenor Terphane, Inc., and Defendant-Intervenors Mitsubishi Polyester Film, Inc. and SKC, Inc. ("collectively "Mitsubishi") submitted letters in support of the response brief of Defendant. See Terphane's Letter in Lieu of Resp. Br., ECF No. 53; Mitsubishi's  Letter in Lieu of Resp. Br., ECF No. 54. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[1] and 28 U.S.C. § 1581(c) (2012). The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Plaintiff challenges (1) Commerce's rejection, as untimely, of certain surrogate value information, see Wanhua Rejected Surrogate Value Information, PDs 157-159 at

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

bar codes 3214057-01 to -03 (July 7, 2014), ECF No. 43 ("July 7th Submission")[2]; (2) Commerce's treatment of Wanhua's request for clarification of the reasons for Commerce's rejection of Wanhua's administrative case brief and the redaction instructions for that brief, see Request for Clarification of Rejection, PD 224 at bar code 3265244-01 (Mar. 19, 2015), ECF No. 61 ("Clarification Letter"); and (3) Commerce's selection of Indonesia as the primary surrogate country.[3] See Wanhua Br. 2, 19, 22.

In response, Defendant requests that the court sustain Commerce's rejection of the information in Wanhua's July 7th Submission and moves for a partial voluntary remand to address (1) Commerce's treatment of Wanhua's Clarification Letter and (2) Commerce's primary surrogate country selection. See Def.'s Resp. 4, 22. Plaintiff agrees that remand is appropriate, but argues for a remand of the entire matter. See Wanhua Reply 5.

## I. Legal Framework

In an antidumping duty administrative review, Commerce determines whether subject merchandise is being, or is likely to be, sold at less than fair value in the United States by comparing the export price and the normal value of the merchandise. 19 U.S.C. §§ 1675(a)(2)(A), 1677b(a). In the non-market economy ("NME") context, Commerce calculates normal value using data from surrogate countries to value the factors of

---

[2] "PD" refers to a document contained in the public administrative record, which is found in ECF No. 33-5, unless otherwise noted.
[3] Wanhua also seeks fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"). Given that the court is remanding this matter, there is no need for the court to address Plaintiff's EAJA claim at this time.

production ("FOPs"). 19 U.S.C. § 1677b(c)(1)(B). Commerce must use the "best available information" in selecting surrogate data from "one or more" surrogate market economy countries. 19 U.S.C. § 1677b(c)(1)(B), (4). Commerce has a stated regulatory preference to "normally . . . value all factors in a single surrogate country." 19 C.F.R. § 351.408(c)(2) (2014).

The antidumping statute requires that surrogate data must be "to the extent possible" from a market economy country or countries that are (1) "at a level of economic development comparable to that of the [NME] country" and (2) "significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4). The statute does not define the phrase "level of economic development comparable to that of the [NME] country," nor does it require Commerce to use any particular methodology in determining whether that criterion is satisfied. To partially fill the statutory gap, Commerce promulgated 19 C.F.R. § 351.408(b), which emphasizes per capita Gross Domestic Product ("GDP") as a measure of economic comparability:

> In determining whether a country is at a level of economic development comparable to the non-market economy under [19 U.S.C. § 1677b(c)(1)(B)] or [19 U.S.C. § 1677b(c)(4)(A)] of the Act, the Secretary will place primary emphasis on per capita GDP as the measure of economic comparability.

19 C.F.R. § 351.408(b). Commerce has since explained that it "now uses per capita [Gross National Income, or "GNI"], rather than per capita GDP, because while the two measures are very similar, per capita GNI is reported across almost all countries by an authoritative source (the World Bank), and because [Commerce] believes that the per capita GNI represents the single best measure of a country's level of total income and

thus level of economic development." Antidumping Methodologies in Proceedings Involving Non–Market Economy Countries: Surrogate Country Selection and Separate Rates, 72 Fed. Reg. 13,246, 13,246 n.2 (Dep't Commerce Mar. 21, 2007) (req. for comments).

Commerce uses GNI data "as reported in the most current annual issue of the World Development Report (World Bank)" to identify potential surrogate countries that are economically comparable to the NME country. Import Admin., U.S. Dep't of Commerce, Non–Market Economy Surrogate Country Selection Process, Policy Bulletin 04.1 at 2 (2004), http://enforcement.trade.gov/policy/bull04–1.html (last visited this date) ("Policy Bulletin"). The identification of potential surrogate countries occurs early in a dumping proceeding, id., and is the first step in Commerce's four-step process to select a surrogate country:

> (1) the Office of Policy ("OP") assembles a list of potential surrogate countries that are at a comparable level of economic development to the NME country; (2) Commerce identifies countries from the list with producers of comparable merchandise; (3) Commerce determines whether any of the countries which produce comparable merchandise are significant producers of that comparable merchandise; and (4) if more than one country satisfies steps (1)–(3), Commerce will select the country with the best factors data.

Vinh Hoan Corp. v. United States, 39 CIT ____, ____, 49 F. Supp. 3d 1285, 1292 (2015) (internal quotation marks omitted) (quoting the Policy Bulletin).

## II. Discussion

On April 16, 2014, the OP produced a non-exhaustive list of potential surrogate countries that it had determined were economically comparable to the People's Republic

of China based on GNI data from 2012 ("OP's List"). See Req. for Surrogate Country and Surrogate Value Comments and Information, Attach. 1, PD 89 at bar code 3195959-01 (Apr. 16, 2014), ECF No. 43 ("April 16th Request"). Commerce placed the OP's List on the record and notified the interested parties to the administrative review of the deadlines for the submission of comments and information regarding (1) the economic comparability of potential surrogate countries and (2) surrogate data to value Wanhua's FOPs. See id.

Regarding economic comparability, the deadline to submit information and comments on the countries on OP's List and to propose other economically comparable countries was April 23, 2014 ("April 23rd Deadline"). The deadline for rebuttal comments on the list of potential surrogate countries and any newly proposed countries was April 28, 2014. As for surrogate data to value Plaintiff's FOPs, the deadline for comments on merchandise production, data quality, and data availability in the potential surrogate countries, and for the submission of publicly-available information to value those FOPs was May 7, 2014, with rebuttal comments due May 19, 2014. See id. at 1-2. In the April 16th Request, Commerce indicated that, notwithstanding the last two deadlines in May, interested parties could submit publicly-available information to value FOPs no later than 30 days before the scheduled date of the preliminary results. Id.

In its comments on economic comparability, Wanhua insisted that Commerce evaluate the economic comparability of potential surrogate countries using 2013 GNI data, scheduled for release in July 2014, because it was the most current. Wanhua Br. 4-5. Although Wanhua knew that the 2013 GNI data would not be available until after the April 23rd Deadline, Wanhua did not seek an extension of that deadline. Rather,

Wanhua submitted the newly released 2013 GNI data as additional surrogate value information in its July 7th Submission, which was prior to the last deadline permitted in the April 16th Request. Id. 5.

In the preliminary results, Commerce selected Indonesia as the primary surrogate country. See Decision Mem. for the Prelim. Results of the 2012-2013 Antidumping Duty Admin. Rev. of Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China, A-570-924 (Nov. 28, 2014), PD 190 at bar code 3244446-01, ECF No. 43 (citing OP's List in April 16th Request for 2012 GNI data as most current). Months later, Commerce rejected the 2013 GNI data as untimely because it was submitted after the April 23rd Deadline. See Letter Rejecting Wanhua Surrogate Value Information, PD 216 at bar code 3264120-01 (Mar. 12, 2015), ECF No. 43. Thereafter, Commerce requested that Wanhua submit redacted versions of its July 7th Submission and administrative case brief to remove the 2013 GNI data and any related arguments based on that data. See Letter Rejecting Wanhua Case Brief, PD 223 at bar code 3265209-01 (Mar. 19, 2015), ECF 43. Wanhua complied with Commerce's request.

In addition to providing redacted versions of its July 7th Submission and administrative case brief, Wanhua requested clarification of Commerce's rationale for the rejection. See Clarification Letter. In that letter, Wanhua argued that Commerce's redaction request was overly broad and caused Wanhua to remove timely filed factual information and arguments based on that information. See id.; see also Wanhua Br. 7. Commerce rejected the Clarification Letter and removed it from the public administrative record, finding that the letter itself contained "specific information previously rejected as

untimely." Rejection of Wanhua's Clarification Letter, PD 233 at bar code 3282034-01 (June 3, 2015), ECF No. 43. In the Final Results, Commerce continued to rely on the 2012 GNI data and again selected Indonesia as the primary surrogate country, finding that Indonesia possessed the best available information. See Decision Mem. at 5-6.

While the parties are in agreement that remand is appropriate, they dispute the proper scope of the remand. Defendant seeks a limited remand to address Commerce's treatment of the Clarification Letter, acknowledging that "Commerce's reconsideration of Wanhua's [Clarification Letter] may implicate Commerce's selection of a surrogate country in this administrative review." Def.'s Resp. 23 (citation omitted). Defendant maintains, however, that the court should sustain Commerce's rejection of the 2013 GNI data as lawful. Id. 9. Plaintiff, on the other hand, argues that a full remand is appropriate because "issues as to the selection of a surrogate country and surrogate values must be considered as a whole." Wanhua Reply 5 (citing Dorbest Ltd. v. United States, 30 CIT 1671, 462 F. Supp. 2d 1262 (2006)).

Where an agency requests a remand to reconsider its previous position, without confessing error, "the reviewing court has discretion over whether to remand." SFK USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (citations omitted). While the court may refuse a remand if the agency's request is "frivolous or in bad faith," a remand is usually appropriate if the agency's concern is "substantial and legitimate." Id. Here, without conceding error, Defendant has requested an opportunity for Commerce to reconsider its previous position on the treatment of the Clarification Letter, which, as Defendant indicated, may implicate a central finding in the Final Results—Commerce's

selection of Indonesia as the source of the best available information to value Plaintiff's FOPs. See Vinh Hoan Corp., 39 CIT at ____, 49 F. Supp. 3d at 1298 ("It is undoubtedly true that the selection of the primary surrogate country is central to Commerce's selection of sources to value a respondent's factors of production.").

The remand request reflects a "substantial and legitimate" concern, and therefore is granted. See SKF USA Inc., 254 F.3d at 1029 ("[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate."). However, this leaves the question of the scope of the remand. It is somewhat incongruous for Defendant to ask the court to sustain the rejection of the 2013 GNI data, while seeking a remand to reconsider Commerce's request that Plaintiff redact that data from its submissions. It appears that Commerce cannot address its treatment of the Clarification Letter as well as its surrogate country selection without implicating the reasonableness of its rejection of Wanhua's submission of the 2013 GNI data. The court therefore declines to limit the scope of the remand. Consequently, the court will reserve decision on the lawfulness of Commerce's rejection of the 2013 GNI data.

### III. Conclusion

For the foregoing reasons it is hereby

**ORDERED** that this action is remanded to Commerce; it is further

**ORDERED** that Commerce shall file its remand results on or before October 17, 2016; and it is further

    **ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.


                                            /s/ Leo M. Gordon
                                       Judge Leo M. Gordon


Dated: August 15, 2016
       New York, New York